OVERSEAS PROGRAMMING COMPANIES, LTD., Plaintiff-Appellant,

v.

CINEMATOGRAPHISCHE COMMERZ-ANSTALT and Iduna Film GmbH, Defendants-Appellees.

No. 1101, Docket 82–7138.

United States Court of Appeals, Second Circuit.

Argued May 12, 1982.

Decided July 23, 1982.

Michael T. Sullivan, New York City (Robert A. Faller, Patricia L. Wager, and Moore, Berson, Lifflander & Mewhinney, New York City, on the brief), for plaintiff-appellant.

Pamela G. Ostrager, New York City (Carleton G. Eldridge, Jr., Lisa B. Dubrow, and Coudert Brothers, New York City, on the brief), for defendants-appellees.

Before FEINBERG, Chief Judge, and NEWMAN and WINTER, Circuit Judges.

NEWMAN, Circuit Judge:

Although a district court has broad discretion in deciding whether to dismiss a suit on the ground of *forum non conveniens, see Gulf Oil Co. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Alcoa Steamship Co. v. M/V Nordic Regent,* 654 F.2d 147, 158 (2d Cir.) (*en banc*), cert. denied, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980), that discretion is not limitless.[1]

---

1. We have recently noted that advances in modern telecommunications and jet travel may further circumscribe a district court's discretion in dismissing a suit on the ground of *forum non conveniens. Manu International, S. A. v. Avon Products, Inc.,* 641 F.2d 62, 65 (2d Cir. 1981); *see Calavo Growers v. Generali Belgium,* 632 F.2d 963, 969 (2d Cir. 1980) (Newman, J., concurring), cert. denied, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981); *see also Fitz-*

The District Court for the Southern District of New York (Constance Baker Motley, Chief Judge) dismissed on *forum non conveniens* grounds the instant suit by Overseas Programming Cos. for declaratory relief and damages for violations of rights allegedly held by Overseas to certain films. For reasons that follow, we reverse the judgment of the District Court.

Overseas Programming Cos. is a New York corporation with its principal place of business in California. This dispute concerns rights to be exercised outside the United States to certain silent films and "talkies," some of which feature Laurel and Hardy. Overseas claims that it received these rights through two chains of title: (1) from Hal Roach Studios ("HRS") to Grand National Pictures Ltd. to Overseas, from which Overseas claims rights to the "talkies" in the United Kingdom and certain other English-speaking countries (Australia, South Africa, and New Zealand), and (2) from HRS to Richard Feiner to Overseas, from which Overseas claims the non-United States television rights to the silent films.[2] Overseas contends that defendants Cinematographische Commerz-Anstalt ("CCA") and Iduna Film GmbH have interfered with its rights in these films by licensing certain HRS films for broadcast in the United Kingdom and France.

CCA is organized under the laws of Liechtenstein, where it maintains its principal place of business. Iduna is a limited partnership organized under the laws of West Germany. CCA also claims rights in the films in issue by virtue of three agreements.[3] First, CCA contends that in October 1962 HRS granted to it certain rights to the silent films in various parts of the Eastern Hemisphere for a period from 1962 to June 1979. Second, Portcomm Communications Corp., a British Columbian corporation that was at the time a successor in interest to HRS, assigned to CCA rights in the entire HRS film library for most of the Eastern Hemisphere, subject to existing contracts.[4] Finally, CCA and Overseas entered into an agreement in January 1972. By the terms of that agreement, Overseas granted to CCA certain television rights to the silent films in a specified territory (which included West Germany, East Germany, Austria, Switzerland, and Italy), and CCA appointed Overseas as its distributor for the "talkies" in France, the · United Kingdom, Australia, and New Zealand.

Several lawsuits regarding the rights to these films have already been commenced abroad.[5] In this case, Overseas sued CCA and Iduna in the District Court for the Southern District of New York, alleging breach of contract, unfair competition, and interference with contractual rights; Over-

---

*gerald v. Texaco, Inc.*, 521 F.2d 448, 456 (2d Cir. 1975) (Oakes, J., dissenting) ("One may wonder whether the entire doctrine of *forum non conveniens* should not be reexamined in light of the transportation revolution that has occurred since [1947]."), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976).

2. The rights granted by the HRS-Feiner contract were subject to existing agreements; one of these agreements was an October 1962 contract between HRS and Cinematographische Commerz-Anstalt ("CCA").

3. Iduna is a distributor of CCA's films for, among other territories, the United Kingdom, France, West Germany, and East Germany.

4. Overseas claims that its contract with Grand National is one of the "existing contracts" to which this agreement is subject.

5. Iduna ·has instituted an action in West Germany against Overseas to enjoin it from al-

legedly falsely advertising that Overseas owns all rights to Laurel and Hardy films outside the United States. CCA and Iduna have commenced three actions in England: one against Overseas for damages for slander of title, based on alleged false advertising, for a declaration of their rights to the films, and for an injunction restraining Overseas from infringing CCA's copyrights; one against British Broadcasting Corp. and Granada Television Ltd. for copyright infringement and injunctive relief concerning the broadcast of various HRS films; and one against Grand National for copyright infringement. In France, Overseas sought and obtained an injunction of the broadcast of a particular HRS film by France Region 3, a French television station. Thereafter, France Region 3 sued Overseas and Iduna, from which France Region 3 allegedly received a license to broadcast the film, and Iduna cross-claimed against Overseas.

seas sought damages and declaratory relief. The District Court granted defendants' motion to dismiss the action on the ground of *forum non conveniens*, and Overseas appeals.

In *Gulf Oil Co. v. Gilbert, supra*, 330 U.S. at 508–09, 67 S.Ct. at 843, the Supreme Court articulated the private and public interests that a court must weigh in deciding whether a plaintiff's choice of forum should be rejected on grounds of *forum non conveniens*. Among a litigant's private interests to be considered are the "relative ease of access to sources of proof," the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses," and other matters affecting the cost, speed, and ease of litigating a suit in a particular forum. Furthermore, a court must evaluate the enforceability of a judgment rendered by it, "weigh relative advantages and obstacles to fair trial," and determine whether the plaintiff has instituted suit in a particular forum with the intent to vex or harass the defendant. *Id.* at 508, 67 S.Ct. at 843. The public interests to be considered include the administrative burdens imposed on already congested courts by suits that are properly centered elsewhere and the burden of jury duty on members of a community with no real relation to the dispute. The Court stated that a community has an interest in having "localized controversies decided at home." *Id.* at 509, 67 S.Ct. at 843. Finally, the Court noted that "[t]here is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Id.*

It is this final factor on which the District Court relied most heavily in dismissing the instant suit. The District Court determined that the case presented issues of foreign copyright law which moved the center of the controversy from New York to unspecified locations outside the United States. Although the Court acknowledged that several of the relevant contracts provide for the application of New York law, it found that this fact was not significant enough to prevent dismissal; the Court noted that one of the relevant contracts provides for the application of the law of Ontario. "[B]y asking this court to determine the 'worldwide' rights to the films in New York, instead of in England, plaintiff acknowledges that not only New York law, but also English copyright law, will have to be examined."[6] *Overseas Programming Cos. v. Cinematographische Commerz-Anstalt*, No. 81 Civ. 5564, slip op. at 5 (S.D. N.Y. Feb. 3, 1982).

While a district court's decision to dismiss a suit on the ground of *forum non conveniens* is to be affirmed absent a finding of an abuse of discretion, *see Manu International, S. A. v. Avon Products, Inc.*, 641 F.2d 62, 65 (2d Cir. 1981); *Calavo Growers v. Generali Belgium*, 632 F.2d 963, 968 (2d Cir. 1980), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981); *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 451 (2d Cir. 1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976), we conclude that this case is one of those infrequent instances where a dismissal should be overturned. As an initial matter, the District Court erred in failing to designate a more convenient forum to which the parties should be relegated. Lawsuits regarding the rights in issue here are already in progress in three foreign countries. Although defendants, in support of their motion to dismiss, argued that England is a

---

**6.** The Court pointed to the jury confusion that might result from the necessity of considering foreign copyright law and the Court's own unfamiliarity with such law. The Court also found that the factors involving the location of witnesses and of relevant sources of proof seemed to be evenly balanced, but concluded that it would be difficult, if not impossible, to compel the attendance of unwilling witnesses located in England. In addition, the Court stated that its possible inability to assert jurisdiction over all of the entities that are already parties to the lawsuits in England could prejudice the rights of the parties and prevent a full resolution of the controversy. Finally, the Court noted that Overseas, which is already a party to several suits abroad, would not be inconvenienced by dismissal.

more convenient forum, and the District Court in its opinion appears to assume the same, the Court failed to analyze whether litigating this action in England would in fact be more convenient. When "there has been no weighing of the relative advantages of each forum but only a consideration of the drawbacks of one," a district court has abused its discretion. *Founding Church of Scientology v. Verlag*, 536 F.2d 429, 436 (D.C.Cir.1976) (emphasis omitted).

Our primary concern, however, is that the District Court failed to identify the basic issue in the lawsuit, which is whether Overseas has contractual rights to the films under various agreements, several of which are governed by New York law. If the District Court decides that Overseas was granted by contract the rights to the films in issue, it (or another court), should an infringement claim be properly presented to it,[7] can decide whether those rights have been impaired under the copyright laws of the countries in which the allegedly infringing acts occurred. The infringement issues, which the District Court viewed as inappropriate for determination in the Southern District, are secondary to the basic issue of whether Overseas has the rights it claims. With this basic issue in view, it is apparent that the District Court erred in thinking that issues of foreign copyright law would so dominate the case as to make trial in the Southern District inappropriate.

The Supreme Court has cautioned that "unless the balance [of factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Co. v. Gilbert, supra*, 330 U.S. at 508, 67 S.Ct. at 843. In this case the defendants have failed to show that the balance of public and private factors identified in *Gulf Oil* is so strongly in their favor as to warrant dismissal. Since New York law applies to several of the relevant contracts, New York has a substantial nexus to the litigation. In addition, many of the relevant witnesses reside or are doing business in the United States, which makes New York a more convenient forum than any one of the foreign locations in which litigation has already been commenced. Moreover, any difficulties that the Court might encounter regarding witnesses whose attendance the Court is unable to compel can most likely be resolved by the use of deposition testimony or letters rogatory.

Accordingly, the judgment of the District Court is reversed.

---

7. Although the complaint could be read to assert infringement claims, Overseas insists in its brief that it is not presenting such claims. We do not decide whether, should the District Court construe the complaint to include any infringement claims, such claims should be dismissed on the ground of *forum non conveniens*. Cf. *Wyndham Associates v. Bintliff*, 398 F.2d 614, 618–19 (2d Cir.) (severing certain claims against some defendants and transferring those claims to a more convenient forum under 28 U.S.C. § 1404(a)), *cert. denied*, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968); *Mobil Oil Corp. v. W. R. Grace & Co.*, 334 F.Supp. 117 (S.D.Tex.1971) (same).