TRAMP OIL AND MARINE, LTD.,
Plaintiff, Appellant,

v.

M/V MERMAID I, etc., et al.,
Defendants, Appellees.

No. 84–1201.

United States Court of Appeals,
First Circuit.

Argued Aug. 7, 1984.
Decided Sept. 13, 1984.

Michael G. Chalos, New York City, with whom Peter Skoufalos, Halley & Chalos, New York City, and Calvesbert & Brown, San Juan, P.R., were on brief, for plaintiff, appellant.

J. Ramon Rivera Morales, Hato Rey, P.R., with whom Jose Antonio Fuste, and Jimenez & Fuste, Hato Rey, P.R., were on brief, for defendant, appellee M/V Mermaid I.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and PEREZ–GIMENEZ,* District Judge.

---

* Of The District of Puerto Rico, sitting by desig-nation.

LEVIN H. CAMPBELL, Chief Judge.

Plaintiff-appellant Tramp Oil and Marine, Ltd. ("Tramp") appeals from a judgment of the district court dismissing without prejudice its in rem action on the grounds of *forum non conveniens.* We reverse and remand for further proceedings.

While in the port of Savannah, Georgia, appellee vessel M/V MERMAID I ("MERMAID") sent out through its master a request for bunker fuel. At that time, the MERMAID was time chartered by Tokyo Boeki, Ltd. ("Tokyo"), of Japan, from its owner, Prince Arrow S.A. ("Prince"), of Panama. Tokyo had sub-time chartered the vessel to Logos Shipping APS ("Logos"), of Copenhagen, Denmark. The request accordingly went to Logos, who responded by asking J & L Bunkers A/S ("J & L"), of Copenhagen, Denmark, to arrange to supply the fuel. J & L, in turn, contracted appellant Tramp, of England, a broker of bunker fuel. Tramp made arrangements with Exxon International ("Exxon"), who caused Colonial Oil Industries, Inc. ("Colonial"), to supply the oil to the MERMAID in Savannah. Both of the latter are domestic United States corporations.

Thereafter, Tramp paid Exxon in full, who then paid Colonial. Tramp next sent an invoice for $91,360.14 for the fuel addressed to J & L and its parent company, Jensen and Larsen A/S ("Jensen"), of Copenhagen, Denmark, as well as to the owner and to the master of the MERMAID. J & L sent a similar invoice to Logos, who paid J & L in full. J & L, however, only made a partial payment to Tramp, which after unsuccessful efforts to collect the unpaid balance of $46,360.16, brought an action in Denmark against both J & L and Jensen. According to the district court, both Danish corporations are bankrupt.

Thereafter, Tramp filed an in rem action in the United States District Court for the District of Puerto Rico against the MERMAID, which happened to be in San Juan

at the time.[1] Tramp claimed a maritime lien against the ship under 46 U.S.C. §§ 971 *et seq.* The MERMAID was attached by the court's marshal according to the procedure set out in Rule C(3) of the Supplementary Admiralty Rules of the Federal Rules of Civil Procedure. The vessel was later released after Prince filed for her a letter of undertaking from the underwriter.

The MERMAID responded to the complaint, denying the existence of a lien in favor of Tramp and claiming that Logos's payment to J & L had extinguished the debt. Later, MERMAID moved to dismiss on the ground of *forum non conveniens.* The district court allowed the motion without prejudice, ruling that the controversy boiled down to "determining whether or not Logos' payment in full to J & L of the invoice extinguished the debt," a question that, in its opinion, required the application of foreign law. The court reasoned that it could not apply American law to resolve the controversy because the American suppliers, Exxon and Colonial, had been paid in full. Citing to the case of *Piper Aircraft v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), it held that "[t]he need to apply foreign law points toward dismissal." The court also noted that the parties were all foreign, which meant that the litigation would be hampered by additional expenses and administrative complications, adding more pressure to the court's already overburdened docket. It concluded that inasmuch as Tramp had initiated proceedings against J & L and Jensen in Denmark, it was not left without recourse.

Tramp appeals from this judgment claiming that the district court erred in dismissing the action without a preliminary finding that an adequate alternative forum was available, in finding that foreign law was controlling, and in misapplying the factors enunciated in the leading Supreme Court decision of *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

The doctrine of *forum non conveniens* was applied in federal admirality suits even before the Supreme Court extended it to diversity actions in *Gilbert,* and its companion case, *Koster v. Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). *See, e.g., Canada Malting Co. v. Paterson Steamships, Ltd.,* 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837 (1932). *See also,* Bickel, *The Doctrine of Forum Non Conveniens as Applied in the Federal Courts in Matters of Admiralty,* 35 Corn.L.Q. 12 (1949). In *Gilbert,* the Supreme Court set out the standard of review: the judgment of the trial judge will be reversed only where there has been a clear abuse of discretion. 330 U.S. at 511–12, 67 S.Ct. at 844–845. *See also Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 256, 70 L.Ed.2d 419 (1981). In the present case, we hold that the district court exceeded its discretion by dismissing the action without first identifying an adequate alternative forum.

■■■ The doctrine of *forum non conveniens* presupposes at least two forums in which the defendant is amenable to process. *Gilbert,* 330 U.S. at 506–07, 67 S.Ct. at 842. Dismissal in one forum is only proper upon a supported finding that another adequate forum exists where the plaintiff can litigate essentially the same claim. *See Pain v. United Technologies Corp.,* 637 F.2d 775, 784 (D.C.Cir.1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981); *La Seguridad v. Transytur Line,* 707 F.2d 1304, 1307 (11th Cir.1983). *See also Ahmed v. Boeing Co.,* 720 F.2d 224 (1st Cir.1983) (dismissal proper where district court effectively required defendants to submit to second forum and to waive any statute of limitations defense not available in the first). In the present case, the district court failed to make an express determination of the existence of another, more convenient, forum available to appellant where it could bring an action against the defendant vessel. This omis-

---

**1.** Tramp also filed in personam actions against Prince and Logos. However, these parties could not be served and are therefore not part of this proceeding.

sion is fatal.[2] *See Overseas Programming Companies, Ltd. v. Cinematographische Commerz-Anstalt,* 684 F.2d 232, 234–35 (2d Cir.1982). *Compare Swift v. Compania Caribe,* 339 U.S. 684, 697–98, 70 S.Ct. 861, 869, 94 L.Ed. 1206 (1949).

■ The district court noted that Tramp had initiated legal proceedings against the bankrupt J & L and Jensen in Denmark. If we assume from this that the district court regarded Denmark as the convenient alternative forum, there was still no evidence before it that either the defendant MERMAID or its Panamanian owner is answerable to the courts there, nor that the particular claim in issue—for a lien, based on subrogation to the claims of the American suppliers—would be recognized or could be enforced by a Danish tribunal. The doctrine of *forum non conveniens* does not allow Tramp to be divested of its asserted lien (or security substituted in lieu thereof) in return for a problematic lawsuit elsewhere against other, apparently bankrupt, defendants.

Tramp's present claim is, moreover, distinctly different from a contractual claim against J & L and Jensen. Its present claim is for a maritime lien arising, if at all, from provisions of the Ship Mortgage Act of 1920, as amended, 46 U.S.C. § 971 (Supp.1984). Neither the defendant MERMAID nor its owner were parties to whatever contract existed between Tramp and J & L. *See Gulf Trading & Transport Co. v. Vessel Hoegh Shield,* 658 F.2d 363, 366

(5th Cir.1981), *cert. denied,* 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982).

The purpose of the maritime lien provisions of the Ship Mortgage Act of 1920 is to benefit American materialmen who supply necessaries to vessels. *See* H.R.Rep. No. 92–340 92d Cong., 1st Session, reprinted in 1971 U.S.Code Cong. & Ad.News 1363, 1365 (1971). It creates a direct in rem cause of action against the ship in favor of the supplier. A plaintiff suing under this Act must demonstrate that he has furnished "repairs, supplies ... or other necessaries to any vessel ... upon the order of the owner of such vessel, or of a person authorized by the owner." 46 U.S.C. § 971. Here, Tramp is claiming to be subrogated to the rights of Exxon and Colonial, the American materialmen who were the direct suppliers of the fuel, and who have already been paid in full. Tramp therefore seeks to recover against a security which, in its view, the law makes available to it—not to collect from the principal debtors.

It remains to be decided, of course, whether the provisions of the Ship Mortgage Act allow Tramp to recover upon a maritime lien on the MERMAID in the circumstances of this case.[3] This will be a matter for the district court to determine upon remand, and we do not intimate at this time what the answer should be. Appellee insists that as Tramp is only a broker, not a direct supplier, it is not entitled to a lien. Appellee also claims that the lien

---

**2.** Recognizing this difficulty at oral argument, appellee's counsel offered, on behalf of his clients, to submit to process in Denmark, letting appellant retain the security while this litigation takes place. This offer does not solve the problem. It is still uncertain whether appellant has a viable cause of action *against the vessel* under Danish or any other law, other than his alleged claim under 46 U.S.C. §§ 971 *et seq.* (Supp. 1983). The burden of proof to establish that there exists an adequate alternative forum was upon appellee, who failed to carry it in the district court. *See Pain v. United Technologies Corp.,* 637 F.2d 775, 784 (D.C.Cir.1980).

**3.** In their appellate briefs, the parties seem to suggest that the district court believed that appellant's whole claim was governed, not by the

Ship Mortgage Act of 1920, but solely by foreign law. If this were true, of course, the district court would be without any jurisdiction to grant any relief. But where, as here, the foreign ship was fueled by American suppliers in a United States port, the suppliers, at least, clearly had rights under the lien provisions of the Ship Mortgage Act. *See Gulf Trading & Transportation Co. v. M/V Tento,* 694 F.2d 1191 (9th Cir. 1982), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2091, 77 L.Ed.2d 301 (1983); *Gulf Trading & Transportation Co. v. Vessel Hoegh Shield,* 658 F.2d 363 (5th Cir.1981), *cert. denied,* 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed. 1332 (1982). We understand appellant to base its claim on its purported right to stand in the American suppliers' shoes.

falls because the debt was extinguished by Logos's payment to J & L.

 The district court was influenced in its preference for a foreign forum by its belief that the latter defense—that Logos's payment to J & L had discharged the relevant indebtedness—would call for a determination of foreign contract law for which an American court was less well suited than a foreign tribunal. But whether or not resolution of that defense will require reference to foreign law (a matter we do not decide at this time), the primary question remains plaintiff's right to assert a federal maritime lien upon the defendant vessel. This is a question well within the special competency of a United States court. Even should it be determined that the resolution of certain questions of foreign contract law is necessary in order to determine plaintiff's right to enforce a lien under the Ship Mortgage Act of 1920, this in no way alters the fact that plaintiff's cause of action, and the ultimate issue in the case, arise under and involve United States law. Of course, to the extent foreign law also becomes material, the district court is not without means to investigate and determine what that law is. This is not a situation where trial in the district court should present extreme and abnormal difficulties. *Cf. Piper Aircraft Co. v. Reyno*, 454 U.S. at 243, 102 S.Ct. at 259.

In the absence of a supported finding that appellant had available another adequate forum within which to assert a similar cause of action against the vessel, it was an abuse of discretion for the district court to have dismissed the action on the grounds of *forum non conveniens*.

*Reversed and remanded for further proceedings.*