**BOOSEY & HAWKES MUSIC PUBLISHERS, LTD.,**
Plaintiff,

v.

**The WALT DISNEY COMPANY and Buena Vista Home Video, Defendants.**

No. 93 Civ. 0373 (KTD).

United States District Court,
S.D. New York.

Aug. 9, 1996.

Kay Collyer & Boose, New York City (Marcia B. Paul, James M. Kendrick, Toby M.J. Butterfield, of counsel), for Plaintiff.

Sanford M. Litvack, Edward J. Nowak, New York City, Chadbourne & Parke, New York City (Eric J. Lobenfeld, Kathleen E. Gardner, of counsel), for Defendants.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Defendants have moved for partial summary judgment on the third and fifth causes of action in the Complaint. Defendants have also moved for dismissal of the second claim on the grounds of *forum non conveniens.* Plaintiff has filed a cross-motion for summary judgment on the first and second claims as alleged in the Amended Complaint. For the following reasons, Defendants' motion for summary judgment is granted. Defendants' motion to dismiss on the grounds of *forum non conveniens* is also granted. Plaintiff's cross-motion is granted as to the first claim and denied as to the second claim.

### Background

This case involves a musical composition by Igor Stravinsky, "Le Sacre De Printemps," also known as "The Rite of Spring." Plaintiff is the assignee of Stravinsky's rights to "The Rite of Spring," pursuant to an agreement entered into in 1947. (Am.Compl. ¶ 12). Plaintiff admits, however, that Stravinsky never had any copyright protection under the laws of the United States for this work. (*Id.* ¶ 5; Affid. of Marcia B. Paul ¶ 4).

In 1939, Igor Stravinsky licensed to Walt Disney Enterprises the irrevocable right to "record in any manner, medium or form" the musical composition entitled "The Rite of Spring," and to make and distribute copies of such recordings world wide. (License Agreement; Affid. of Marcia B. Paul ¶¶ 8–10). The license agreement stated,

> In consideration of the sum of Six Thousand ($6,000.) Dollars, receipt of which is hereby acknowledged, the undersigned does hereby give and grant unto Walt Disney Enterprises, a California corporation, (hereinafter called the "Purchaser"), ... the nonexclusive, irrevocable right, license, privilege and authority *to record in any manner, medium or form*, and to license the performance of, the musical composition hereinbelow set out, ... *and to make copies of such recordings* and to import said copies of recordings into any country covered by this license ...

> . . . . .

> 3. .... The music of said musical composition may be used in one motion picture throughout the length thereof or through such portion or portions thereof as the Purchaser shall desire. The *said music may be used in whole or in part and may be adapted, changed, added to or subtracted from, all as shall appear desirable to the Purchaser in its uncontrolled discretion.* .... The title "Rites of Spring" or "Le Sacre de Printempts", or any other title, may be used as the title of said motion picture *and the name of the undersigned may be announced in or in connection with said motion picture.*

> . . . . .

> 5. The right to record the musical composition as covered by this agreement is *conditioned upon the performance of the musical work in theatres having valid licenses from the American Society of Composers, Authors and Publishers, or any other performing rights society* having jurisdiction in the territory in which the said musical composition is performed.

(1939 Agreement) (emphasis added).

In 1940, Disney released the animated motion picture *Fantasia*, which contained more than twenty-two minutes of music from "The Rite of Spring." According to Plaintiff, *Fantasia* enjoyed phenomenal success and has become an animation classic. (Pl.Statement of Material Facts ¶ 21). Also according to Plaintiff, "The Rite of Spring" as it appears in *Fantasia* is altered from the original version as composed by Stravinsky.

In November, 1991, Disney released *Fantasia* on videocassette and laser disc (the videocassette and laser disc are referred to collectively as the *Fantasia* video). Plaintiff alleges that Disney has sold twenty-one million *Fantasia* videos. (*Id.* ¶ 24). The *Fantasia* video is the same in relevant part as the movie was when first released in 1941. (*See* Pl.Opp'n Mem. at 9).

Plaintiff asserts that the following narration within the *Fantasia* video gives a false impression that the video features the original version of Stravinsky's "The Rite of Spring":

> When Igor Stravinsky wrote his ballet "The Rite of Spring", his purpose was in his own words to express primitive life. So Walt Disney and his fellow artists have taken him at his word. Instead of presenting the ballet in its original form as a simple series of tribal dances, they have visualized it as a pageant, as the story of the growth of life on earth. It's a coldly accurate reproduction of what science thinks went on during the first few billion years of this planet's existence. So, now imagine yourselves out in space, billions and billions of years ago looking down on this lonely tormented little planet spinning through an empty sea of nothingness.

(Pl.Opp'n Mem. at 10–11). Plaintiff also asserts that "[i]n the promotional piece which accompanies the Deluxe Commemorative Edition of the Video, Disney takes pains to highlight the historical significance of Stravinsky's 'The Rite of Spring.'" (*Id.* at 11). The allegedly offensive language is as follows:

> Following and contrasting the humor of "The Sorcerer's Apprentice" in the program is the most modern, and to many, the most disturbing piece in *Fantasia*, Stravinsky's "The Rite of Spring". The music,

full of primitive dissonance and with unusual form, has been variously described as immoral, hypnotic, and provocative. Its insistent rhythms and shifting stresses give an impression of almost inexhaustible imagination. Originally written for a ballet depicting a virgin sacrifice to prehistoric Russian gods, its first performance in Paris in 1913 ended in a free-for-all riot. But in recent years, it has come to be regarded by musicians and critics as a significant milestone in modern music.

The Disney interpretation retains a feeling similar to the original ballet, yet departs radically from its form, story and character. Walt Disney had been intrigued for years by the power and the savagery of prehistoric creatures. He decided "The Rite of Spring" would depict a scientific conception of the beginning of the universe and follow the history of earth from a primordial molten mass with brilliant gases through the era of the extinction of the dinosaurs—a symbolic cycle from creation to death. Doing painstaking research, the artists consulted noted astronomers and paleontologists, studied scholarly papers, and reconstructed skeletons, only to discover that the scientific community was in disagreement. Much of the presumed knowledge of the Proterozoic, Paleozoic, and Mesozoic Ages was actually based on conjecture. Nevertheless, the artists came up with a tense and dramatic visualization of prehistoric life. Tied to the suggestive rhythms of the haunting score, the Tyrannosaurus Rex with his carnivorous appetites provides one of the most powerful elements of the film. Moreover, the laser disc package lists "The Rite of Spring" as one of the works in the video and associates Stravinsky with the work.

Plaintiff initiated this suit after Defendant released the *Fantasia* video. The Amended Complaint alleges five causes of action. The first claim seeks a declaratory judgment that the license granted by Stravinsky to Disney did not include the use of "The Rite of Spring" on videocassette. The second claim is for copyright infringement in at least eighteen countries [1] other than the United States by reason of Disney's allegedly unauthorized copying and exploitation of a substantial portion of "The Rite of Spring" on videocassette. The third claim alleges that Disney has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by falsely advertising that the video release of *Fantasia* contains a full and accurate recording of "The Rite of Spring." The fourth claim alleges that Disney breached its license agreement with Stravinsky by marketing video copies of *Fantasia* without Plaintiff's consent. The fifth claim is for Disney's unjust enrichment allegedly obtained by copying and reproducing portions of "The Rite of Spring" without Plaintiff's consent.

## Discussion

Defendants have moved for summary judgment on Plaintiff's Lanham Act claim and on Plaintiff's claim for unjust enrichment. Defendants have also moved to dismiss Plaintiff's "foreign damages" claims on the ground of *forum non conveniens*. In response to the latter motion, Plaintiff filed a cross-motion seeking: (a) summary judgment on the first claim, which seeks a declaratory judgment that Disney's license did not include authorization to use "The Rite of Spring" on videocassette; (b) partial summary judgment on the breach of contract claim; (c) a summary determination that "The Rite of Spring" is subject to valid copyright protection in eighteen countries in which Disney sold *Fantasia* on videocassette; (d) to preclude Disney from offering certain evidence at trial; (e) for reference to a magistrate judge for a determination as to issues of foreign law; and (f) for sanctions against Disney for bringing a frivolous and untimely motion.

### Standard for Summary Judgment

Summary judgment is warranted only if the court determines that there are no genuine issues of material fact to be tried, and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson*

---

1. The list includes the United Kingdom, France, Germany, the Netherlands, Denmark, Sweden, Norway, Finland, Iceland, Austria, Spain, Italy, Belgium, Canada, Australia, New Zealand, South Africa, and Japan. (Am.Compl. ¶ 33).

*v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining the existence of a material fact, I must view all evidence in the light most favorable to the non-moving party. *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *See Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986). A properly asserted summary judgment motion can be defeated if the non-moving party shows the existence of a material fact. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). The non-moving party must present significant probative evidence demonstrating the existence of a triable issue of fact. *Resolution Trust Corp. v. Murray,* 935 F.2d 89, 92 (5th Cir.1991) (quoting *Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 877 (5th Cir.1984)).

**The First Cause of Action—Declaratory Judgment**

Plaintiff has moved for summary judgment on its first cause of action, which seeks a declaratory judgment that the license agreement between Disney and Stravinsky did not include a grant of rights to use "The Rite of Spring" on videocassette. Plaintiff concedes that Stravinsky could not have restricted Defendant's right to show *Fantasia* on videocassette within the United States because "The Rite of Spring" is in the public domain. (Pl.Cross–Motion Mem. at 37). Therefore, Defendants are free to distribute the *Fantasia* video in the United States, and the proposed declaratory judgment would only affect sales of the video in other countries.

Plaintiff argues three bases for its interpretation of the license agreement: (1) that the license was conditioned upon showing the motion picture in theaters "having valid licenses from the American Society of Composers, Authors and Publishers ['ASCAP'], or any other performing rights society" (the "ASCAP condition"); (2) the license agreement did not grant a right to use future technologies; and (3) the license agreement

said that Stravinsky reserved all rights not granted.

■ Defendants argue that the license agreement between Stravinsky and Disney allows Disney to record and distribute copies "in any manner, medium or form," including videocassette and laser discs. The license agreement's clause which granted Disney's rights clearly supports Defendants' argument. The right to record in any manner, medium, or form must include the right to record on video tape and laser disc. However, the rights conveyed by the license were not unconditional, and the condition placed on Disney's rights must also be considered.

■ The ASCAP condition states that Disney's rights are conditioned on Disney's showing *Fantasia* in theaters licensed by performing rights societies. In countries where "The Rite of Spring" is protected by copyright, the clear wording of the ASCAP condition prevents Disney from distributing video tapes or laser discs directly to consumers.

Defendants argue that the purpose of the ASCAP condition

> was not to limit the places in which 'Fantasia' could be exhibited or the uses to which it could be put. It was to try to ensure that, when Disney exhibited 'Fantasia' in theaters, those theaters would be licensed by a performing rights society for the ultimate direct or indirect benefit of Stravinsky and the publisher.

(Def.Opp'n to Cross Motion at 19). This interpretation goes against the clear and unambiguous language used in the ASCAP condition. Moreover, Defendants have presented no evidence to support their proposed interpretation of the contract. This speculative interpretation is insufficient to prevent summary judgment as to the interpretation of claim one.

■ Defendants also argue that the ASCAP condition should not be enforced, as these types of conditions have been declared violations of antitrust law. (Def.Opp'n to Cross Motion at 17–18) (citing *Alden–Rochelle, Inc. v. American Soc'y of Composers, Authors and Publishers,* 80 F.Supp. 888 (S.D.N.Y.1948)). Plaintiff counters that the

purpose of the ASCAP condition was to ensure that Stravinsky would receive royalty payments from Disney's showing of *Fantasia* in countries other than the United States.[2] According to Plaintiff, since the ASCAP condition affected only exhibitions in foreign countries, this condition does not violate United States antitrust laws and can be enforced.

I am not convinced that the ASCAP condition would be given effect in other nations. The antitrust laws abroad are often similar to those in the United States. In countries where the ASCAP condition is unenforceable, Plaintiff's rights might differ substantially from its rights in other countries. However, the enforceability of the ASCAP condition does not alter the interpretation of the contract.

Summary judgment is appropriate on the issue of contract interpretation. The grant of rights in the license includes the right to record the work on videocassette; however, it does not include the right to distribute the videocassettes directly to consumers.

**The Second Cause of Action—Copyright Infringement**

■ Plaintiff's second cause of action is for copyright infringement in at least eighteen countries. Defendants seek dismissal of "Plaintiff's foreign damages claims," under the principle of *forum non conveniens*. Because this is the only claim that involves foreign damages, I interpret Defendants' motion as a motion to dismiss the copyright infringement action. For the following reasons, Defendants' motion to dismiss the second cause of action is granted.

■ "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). When deciding whether to dismiss on this basis, the private interests of the litigants must be balanced against public interests. The private interests include: (1) relative access to sources

of proof; (2) availability of compulsory process; (3) the cost of obtaining attendance of witnesses; (4) enforceability of a judgment; and (5) other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.* The public factors include, *inter alia:* (1) administrative difficulties flowing from court congestion; (2) appropriateness of having a case tried in a forum familiar with the law at issue; and (3) the local interest in having localized controversies decided at home. *Id.*

Here, the balance of factors strongly favor trial of the copyright issues in each of the nations whose copyright laws are invoked by Plaintiff. Certainly, the courts in each of those countries are much more familiar with their own copyright laws than a United States court could be. Moreover, issues of copyright involve strong public policy issues—so strong in fact that the power to protect copyright in this country is provided for in our Constitution. U.S. Const. art. I, § 8, cl. 8. Thus, these issues are more appropriately decided in their respective countries.

In addition, the enforceability of the ASCAP condition hinges on the application of antitrust laws in each of the nations named by Plaintiff. Antitrust laws, like copyright laws, have strong public policy issues as their basis. Those issues are better litigated in the countries where enforcement of the copyright is sought.

The task of discerning the varying policies and laws governing copyright protection and antitrust issues in each of the eighteen countries is an undue burden on our judicial system.

Plaintiff argues that the following factors favor its chosen forum: (1) the case is ready for trial and all necessary sources of proof are readily accessible to this court; (2) the availability of witnesses; and (3) the interest in having a New York contract interpreted in New York. (Opp'n Mem. at 24–31). Plaintiff argues that the decision in *Overseas Programming Co. v. Cinematographische Com-*

---

**2.** Since "The Rite of Spring" was not protected by copyright in the United States, Plaintiff was

not entitled to royalties on its performance. (Pl. Cross–Motion Mem. at 37).

*merz–Anstalt,* 684 F.2d 232 (2d Cir.1982), supports retention of this case by this court.

In *Overseas Programming,* the Court of Appeals for the Second Circuit found an abuse of discretion where the trial judge dismissed an action under somewhat similar conditions. The court summarized the facts in that case as follows:

> Overseas Programming Cos. is a New York corporation with its principal place of business in California. This dispute concerns rights to be exercised outside the United States to certain silent films and "talkies," some of which feature Laurel and Hardy. Overseas claims that it received these rights through two chains of title: (1) from Hal Roach Studios ("HRS") to Grand National Pictures Ltd. to Overseas, from which Overseas claims rights to the "talkies" in the United Kingdom and certain other English-speaking countries ... and (2) from HRS to Richard Feiner to Overseas, from which Overseas claims the non-United States television rights to the silent films. Overseas contends that defendants ... have interfered with its rights in these films by licensing certain HRS films for broadcast in the United Kingdom and France.

The Court of Appeals noted that Overseas did not allege claims of foreign copyright infringement. The "basic issue" in that case was "whether [Plaintiff] Overseas has contractual rights to the films under various agreements, several of which are governed by New York law." *Id.* at 235. Thus, in light of the substantial New York nexus and the lack of foreign copyright issues, the court held that the balance of factors did not strongly favor the defendant, and dismissal was inappropriate. *Id.*

In the instant case, one major issue is Defendants' contractual rights to "The Rite of Spring"—*i.e.* whether Defendant's use of "The Rite of Spring" was licensed. I have interpreted the license agreement and have explained the rights granted by the agreement. Plaintiff has no cause of action for breach of contract [3] and has no copyright infringement claim under United States laws.

Plaintiff is a foreign citizen attempting to enforce the copyright laws of multiple foreign nations. Whether Defendants are infringing Plaintiff's copyright in other nations depends upon the effects of the antitrust and copyright laws of each of the nations at issue. Whether the terms of the agreement would be enforced in the other countries at issue, and whether Plaintiff has a cause of action for copyright infringement, are matters entwined with the public policy in those countries. Although there is no one forum that would be able to determine all the rights at stake, the courts of each nation whose laws are at issue would be more appropriate fora than the courts of the United States.

The strongest factors favoring retention of this matter are that Plaintiff chose this forum and that the case is ready for trial. However, the evidence on the copyright infringement issue is primarily documentary—indeed, Plaintiff has moved for summary judgment. The parties' access to evidence would not be hampered by the need to litigate in other fora.

On balance, I find that dismissal is appropriate. The second claim for relief is dismissed based on *forum non conveniens.*

### The Third Cause of Action—Lanham Act Violations

Plaintiff asserts Defendants violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1996 Supp.), by mutilating "The Rite of Spring" and by impairing the integrity of that work, in violation of Stravinsky's moral right of authorship. (Pl.Opp'n Mem. at 43). Plaintiff also asserts that Defendants have falsely attributed and advertised the *Fantasia* version of "The Rite of Spring" as Stravinsky's original.

■ Before I discuss the moral right aspect of this claim, I must point out that Stravinsky's "The Rite of Spring" is in the public domain in the United States. Since "The Rite of Spring" has no copyright protection, and since the Copyright Act preempts common law and state law causes of action for rights equivalent to those protected by the Copyright Act, *see* 17 U.S.C. § 301 (1996), Defendants are free to copy

---

**3.** See discussion of Claim four, *infra* pp. 126–    127.

and distribute the work, and any version of the work, in the United States unless precluded by another federal statutory scheme.

Plaintiff argues that "The Rite of Spring" is protected by Section 43(a) of the Lanham Act, which allegedly prohibits mutilation of an author's work. According to Plaintiff, Section 43(a) gives the author, at a minimum, "the right to claim authorship of the work and to object to any distortion, mutilation, or other modification of or other derogatory action in relation to, the said work, which shall be prejudicial to his said honor or reputation." (Pl.Opp'n Mem. at 14–16) (citing The Berne Convention, Art. 6bis). Plaintiff cites *Gilliam v. American Broadcasting Co.,* 538 F.2d 14 (2d Cir.1976), as support for the argument that Section 43(a) protects these "moral rights."

■ Section 43(a) of the Lanham Act states as follows:

(a)(1) Any person who, on or in connection with any goods or services ..., uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a) (1996 Supp.). The essence of this section is to prevent false or misleading representation of fact. As stated in *Gilliam,* "It is sufficient to violate the Act that a representation of a product, although technically true, creates a false impression of the product's origin." 538 F.2d at 24. Thus, the Lanham Act proscribes a person from falsely representing that a modification of an original work is either (1) the original work or (2) a work of the author of the original. This is the concept propounded in *Gilliam. Id.* at 24–25 ("an allegation that a defendant has presented to the public a 'garbled,' distorted version of plaintiff's work seeks to redress the very rights sought to be protected by the Lanham Act") (citations omitted).

■ Neither Section 43(a) nor *Gilliam,* however, precludes persons from modifying or mutilating a work. Plaintiff's claim based upon the mutilation of "The Rite of Spring" must fail as a matter of law.

■ Plaintiff also asserts that Defendants have contravened Section 43(a) by falsely attributing the *Fantasia* version of "The Rite of Spring" to Stravinsky and by falsely advertising the same. The false attribution and false advertising claims are based upon the narration in the *Fantasia* video and the language on the packaging and promotional material.

To make out a claim of false advertising, the Plaintiff must show "that the message in the challenged advertisement is false." *Lipton v. Nature Co.,* 71 F.3d 464, 474 (2d Cir.1995). To obtain monetary damages under Section 43(a), a plaintiff "must introduce evidence of actual consumer confusion." *Resource Developers, Inc. v. Statue of Liberty—Ellis Island Foundation,* 926 F.2d 134, 139 (2d Cir.1991). The failure to present evidence of actual consumer confusion is sufficient grounds for granting summary judgment in favor of a defendant who is not seeking an injunction. *Id.*

Plaintiff's Lanham Act claim seeks damages only. However, Plaintiff has not presented any evidence of confusion. Therefore, summary judgment in favor of Defendants is appropriate on the Lanham Act claim. The third cause of action is dismissed.

**Fourth Cause of Action—Breach of Contract**

■ Plaintiff has moved for summary judgment on its claim for breach of contract. Although Defendants have not moved for summary judgment on this claim, a summary judgment motion searches the record, and I may grant summary judgment for the non-

moving party where appropriate. *See New England Health Care Employees Union v. Mount Sinai Hospital,* 65 F.3d 1024, 1030 (2d Cir.1995). I find that there is no issue of material fact on the claim for breach of contract. Summary judgment in favor of Defendants is appropriate.

■ Defendants' duties under the license agreement with Stravinsky are fully executed. The agreement stated that Disney was licensed to use "The Rite of Spring" for consideration in the amount of "Six Thousand ($6,000.) Dollars, receipt of which is hereby acknowledged." As the license imposed no further duties on Disney, and Disney has paid the agreed upon consideration, it is clear that Disney cannot be said to have breached the agreement.

Plaintiff alleges that Defendants "breached" a condition in the license. Although Disney's right to use "The Rite of Spring" was conditioned upon showing *Fantasia* in certain theaters, the failure to fulfill that condition did not impose any duties on Disney. Instead, the failure to fulfill the condition means that the use was unlicensed. Such unlicensed use may be an infringement of copyright, where such protection exists. However, there was no breach of contract. Accordingly, the fourth claim for relief is dismissed.

**The Fifth Cause of Action—Unjust Enrichment**

Plaintiff has conceded that this cause of action has been preempted by the Copyright Act, 17 U.S.C. § 301(a). (Pl.Opp'n Mem. at 13). Accordingly, this claim is dismissed.

**Conclusion**

I grant Plaintiff's motion for summary judgment on claim one. I grant Defendant's motion for dismissal of claim two on the grounds of *forum non conveniens.* Summary judgment for the Defendants is granted dismissing claims three, four, and five. This closes the case.

SO ORDERED.