Yuku MASSAQUOI and David
G. Mulbah, Plaintiffs,

v.

VIRGIN ATLANTIC AIRWAYS,
Defendant.

No. 95 Civ. 5612 (SAS).

United States District Court,
S.D. New York.

Oct. 22, 1996.

David S. Ratner, Dinkes & Morelli, New York City, for Plaintiffs Yuku Massaquoi and David G. Mulbah.

Christopher Carlsen, Condon & Forsyth, New York City and George P. McKeegan, McKeegan and McShane, P.C., New York City, for Defendant Virgin Atlantic Airways.

## MEMORANDUM OPINION

SCHEINDLIN, District Judge:

Plaintiffs Yuku Massaquoi ("Massaquoi") and her husband David Mulbah ("Mulbah"), residents of Newark, New Jersey, sue defendant Virgin Atlantic Airways ("Virgin"), a United Kingdom corporation doing business in New York, to recover damages for injuries Massaquoi sustained during a training exercise at Virgin's training facility in England. Virgin moves to dismiss on grounds of forum non conveniens, arguing that England is a more appropriate forum. For the reasons stated below, the motion is denied.

## BACKGROUND

At the time of the accident, Massaquoi was employed by Delta Airlines in New York at John F. Kennedy Airport.[1] Affirmation of David S. Ratner, Plaintiff's attorney, in Opposition to Defendant's Motion to Dismiss ("Ratner Aff."), dated September 16, 1996, at ¶ 8. On April 4, 1995, Massaquoi and approximately thirty other Delta employees travelled to Gatwick Airport to participate in various training classes and exercises taught by Virgin employees.[2] Id. at ¶ 12. As part

---

1. Virgin disputes the fact that Massaquoi was employed in New York and instead contends that she had volunteered for and was training in England for flights which Delta flew with Virgin Atlantic. See Affidavit in Reply of George P. McKeegan, Defendant's Attorney, dated Sept. 23, 1996, at n. 1.

2. Delta and Virgin entered into an agreement whereby Delta was permitted to sell seats on Virgin flights to London. In return for this right, Delta provided Delta employees for the flights to service the Delta passengers who had purchased these seats. See Ratner Aff. at ¶ 9–10. Pursuant to the agreement, Delta sent its employees to the Virgin training facility at Gatwick Airport in London. Id. at ¶ 11.

of a 747 evacuation simulation, Massaquoi claims that the trainees were required to slide down an evacuation slide. She claims that she descended down the slide very quickly and when she reached the bottom, she flew off the slide and fractured her ankle. *Id.* at 17. She alleges that her injuries were caused by the "careless and negligent manner in which [Virgin] owned, operated, maintained, controlled, supervised and conducted training classes." Complaint at ¶ 8.

Massaquoi received emergency room treatment at Crawley hospital in London and was then transferred for emergency surgery at Bupa–Gatwick Hospital in London. Ratner Aff. at ¶ 20. After six days, she left the hospital and remained at her sister's apartment in London for six weeks. *See* Deposition of Yuku Massaquoi, dated March 28, 1996, at 73. In mid-May she returned to her home in Essex County, New Jersey and sought the care of Dr. David Wolkstein, an orthopaedic surgeon. Ratner Aff. at ¶ 22. Unable to work as a result of her injury, Massaquoi collects New York State Workers' Compensation benefits. She continues to see Dr. Wolkstein, as well as Dr. Norman Petigrow, a physician for the Workers' Compensation Board. Massaquoi brought this action to recover for her pain, suffering, medical expenses and loss of income. *Id.* at ¶ 41. Mulbah's derivative action is for loss of consortium and services of his wife and for financial losses he incurred as a result of her injuries. *Id.* at ¶ 42.

## DISCUSSION

### I. *The Applicable Standard*

In a forum non conveniens analysis, "the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster v. Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947). As a threshold matter, a defendant seeking a change of venue must first demonstrate that an adequate alternative forum exists. *See Blanco v. Banco Industrial de Venezuela, S.A.,* 997 F.2d 974, 980 (2d Cir.1993). If

Delta has agreed to defend this litigation and to indemnify Virgin for any money recovered by

indeed one does exist, a court must then choose between the two forums by balancing the "private interests" of the litigants and the "public interest" concerns of the court as set forth in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). These so-called *Gilbert* factors address the two equitable principles of the forum non conveniens doctrine: the prevention of harassment by the parties and judicial administration. *See Alcoa S.S. Co., Inc. v. M/V Nordic Regent,* 654 F.2d 147, 151 (2d Cir.) (en banc), *cert. denied,* 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980).

The important private interest considerations include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of viewing the premises, if viewing would be appropriate to the action; and (5) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* at 508, 67 S.Ct. at 843. The public interest considerations include: (6) administrative difficulties resulting from court congestion; (7) imposing jury duty on people of a community which has no relation to the litigation; (8) the local interest in having controversies decided at home; and (9) the avoidance of unnecessary problems in the application of foreign law. *Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. at 843.

Because the relevant factors differ in each case, a district court is accorded considerable discretion in making the forum non conveniens determination. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266–67, 70 L.Ed.2d 419 (1981). Nevertheless, the court's analysis must begin with the proposition that the plaintiff's choice of forum must not be disturbed unless the balance of the private and public interest factors strongly favors the defendant. *See Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843. Moreover, when the plaintiff is an American citizen and the alternative forum is foreign,

the plaintiffs. *Id.* at ¶ 47.

the balance must be even stronger. *See American Special Risk Ins. Co. v. Delta America Re Ins. Co.*, 634 F.Supp. 112 (S.D.N.Y.1986). A plaintiff should not be deprived of her home jurisdiction "except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems." *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 831–32, 91 L.Ed. 1067 (1947).

■ Accordingly, the defendant who moves to dismiss on the basis of forum non conveniens bears a heavy burden at each stage of analysis. *See Virgin Atlantic Airways v. British Airways*, 872 F.Supp. 52, 61 (S.D.N.Y.1994). Whether the plaintiffs' choice of forum should be disturbed must be determined with this standard in mind.

## II. The Existence of an Adequate Alternative Forum

■ In *Piper Aircraft*, the Supreme Court held that at the outset of any forum non conveniens inquiry, the court must first determine whether an alternative forum exists. 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. Therefore, before balancing the *Gilbert* factors, the first question is whether England is an adequate alternative forum. This requirement is usually satisfied if the defendant is amenable to process in the alternative forum. However, if the remedy offered by the other forum is "clearly unsatisfactory," the alternative forum may not be deemed adequate. *Id.* The mere showing that the applicable substantive law in the alternative forum is less favorable to the plaintiff is not enough to defeat a motion to dismiss. *Id.* at 247, 102 S.Ct. at 261–62.

Plaintiffs argue that England is not an adequate alternative forum because Mulbah's claims are not recognized in England. Defendant, on the other hand, submits an affidavit of Mark Bernard Franklin, a London personal injury solicitor, attesting that the English courts recognize personal injury claims of the type filed by Massaquoi. *See* Affidavit of Mark Bernard Franklin, dated July 3, 1996, at ¶ 6. Mr. Franklin also explains that although English law does not recognize Mulbah's claims, it does permit Massaquoi to recover damages specifically for the purpose of reimbursing a benefactor, such as Mulbah, for "financial loss or expense ... incurred by him in coming to the assistance [of the injured person]." *See id.* at ¶ 7.

English law may be less favorable to plaintiffs than American law because it does not recognize loss of consortium claims; however, this does not render England's remedy "clearly unsatisfactory." *See, e.g., Bell v. British Telecom*, No. 95 Civ.1972, 1995 WL 476684, at *2 (S.D.N.Y. August 9, 1995) (the nonrecognition of loss of consortium claims does not render Scotland a clearly unsatisfactory alternative). As a result, England is an adequate alternative forum. Moreover, Virgin consents to jurisdiction in the courts of England, consents to service of process in that forum, and waives any statute of limitations defenses in that forum. *See* Affidavit of George P. McKeegan, attorney for defendant, dated July 8, 1996, at ¶ 2. Having ascertained that an adequate alternative forum exists, I turn to a balancing of the private and public interest factors enumerated above.

## III. Application of the Gilbert Factors

### A. Private Interest Factors

■ Virgin argues that due to the nature and number of English contacts in this case, the proper forum is England. In support of this assertion, it notes that the action arises out of an English incident, involves the alleged misconduct of an English company, and involves a slide which is located in England. *See* Def.Mem. at 8. As a result, Virgin maintains that access to proof and the convenience of witnesses would be better served in England. All documentary and demonstrative evidence relating to Virgin's maintenance and operation of the slide involved in the incident is located in England and many of the witnesses reside in England, including Virgin's employees with knowledge of the incident, the London medical care providers

who treated Massaquoi, and the employees of Atlantic Cabin Simulators who maintained the slide. *Id.* at 9.

Virgin argues that it is inconvenient for many of these witnesses to attend a trial in New York. It further contends that some of the Delta employees who witnessed the accident, witnesses who are not residents of England, would be inconvenienced in their personal and professional lives if they were required to appear for a trial in New York. Virgin maintains that Delta has agreed to make these employees available for trial in England because many of them regularly travel to England in the course of their employment. *See* Affidavit of Allen B. Haney, Senior Claims Analyst for Delta, dated July 3, 1996, at ¶ 3.

Plaintiffs argue that a trial in England would not be more convenient. Not all of the witnesses reside in England. In fact, several witnesses reside in the United States, including Massaquoi's treating physicians, who are located in the New York metropolitan area. Plaintiffs also dispute Virgin's contention that England would be more convenient for the Delta employees who witnessed the accident. Plaintiffs contend that all of them are stationed out of John F. Kennedy International Airport and are United States citizens. *See* Ratner Aff. at ¶ 53.

The Second Circuit has recognized that "the assessment of whether the balance of public and private interests strongly overcomes the plaintiff's choice of forum must be made in light of the realities of modern transportation and communications." *Manu Int'l, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 65 (2d Cir.1981) (quoting Judge Newman's concurring opinion in *Calavo Growers of California v. Generali Belgium*, 632 F.2d 963 (2d Cir.1980), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981)). As the *Manu* court noted, "it will often be easier to transfer a witness or document than to transfer a lawsuit." *Id.* Indeed, this is particularly true when the defendant is a commercial airline. *See Virgin Atlantic Airways v. British Airways*, 872 F.Supp. 52, 61 (S.D.N.Y.1994). Virgin can undoubtedly transport witnesses and documents to New York with relative ease. Plaintiffs, on the other hand, would have much more difficulty transporting their witnesses and documents to England. In light of the speed and convenience of modern transportation, and because defendant is an airline, the fact that many witnesses and documents relevant to the case are located in London is not enough to favor a trial in England.

Virgin also argues that trial should be held in England because some of the witnesses are beyond this Court's subpoena power. Such witnesses are not United States citizens, nor parties to the litigation, and therefore the federal courts in this country cannot compel their attendance. Virgin's concern regarding the accessibility of these witnesses does not preclude it from obtaining testimony from them. As other courts have recognized, testimony of witnesses who are beyond the court's subpoena power may be provided by depositions taken pursuant to letters rogatory. *See American Special Risk Ins. Co. v. Delta America Re Ins. Co.*, 634 F.Supp. 112, 117 (S.D.N.Y.1986) (citing *Overseas Programming Companies v. Cinematographische Commerz–Anstalt*, 684 F.2d 232, 235 (2d Cir.1982)). Furthermore, if these witnesses have a relationship with Virgin, they may be willing, at Virgin's behest, to attend a trial in New York.

Virgin also argues that trial should be in England to enable the jury to view the slide and the scene of the incident. Although it may be helpful to view the slide in its natural setting, enabling a jury to do so is not necessary to properly defend the action. Pictures or a videotape are a reasonable method of demonstration. If the defendant wanted to produce the slide, the plaintiffs note that "it is detachable and deflatable and can be easily transported to the United States." Ratner Aff. at ¶ 40. As stated above, the relative conveniences of both forums must be examined in light of the ease of modern transportation and telecommunications. Although the slide itself is located in England, litigating in New York does not preclude Virgin from obtaining or transporting the materials necessary to defend this action.

▮ Lastly, Virgin claims that if the case is tried in the United States, it will be unable to implead Atlantic Cabin Simulators, the

manufacturer and maintenance providers of the slide. While the inability to implead a third party is a factor that weighs in defendant's favor, it is not conclusive and courts have refused to dismiss actions on such grounds. *See American Special Risk,* 634 F.Supp. at 118. Because the balance of the private interest factors weighs heavily in the plaintiffs' favor, Virgin's inability to implead Atlantic Cabin Simulators is not enough to warrant a dismissal of this case.

In sum, Virgin's inconvenience in defending this action in New York is minimal compared to the inconvenience and expense plaintiffs would suffer in England. Unfamiliar with the English judicial system, plaintiffs would be required to obtain an English solicitor. Once the trial begins, they would incur travel, food, and lodging costs for themselves and for their witnesses. Not only would this trip be physically difficult for Massaquoi due to her ankle injury, but the litigation costs would be prohibitive. In fact, plaintiffs claim that they are financially unable to litigate in England.[3] *See* Affidavit of Yuku Massaquoi, dated September 13, 1996, at ¶ 6. On the other hand, Virgin, a large commercial airline, does business in New York, and can easily and inexpensively transport witnesses and documents. Based on these private interest factors, it would be inequitable to force plaintiffs to litigate in England.

### B. *Public Interest Factors*

Virgin argues that consideration of the public interest factors favors dismissal of this case. Because the incident occurred in England, the records are in England, and the slide was maintained in England, Virgin maintains that England has more contacts with the event and thus has a real interest in the outcome of the case. It argues that the only contact with the Southern District of New York is the "relatively insignificant fact" that Virgin does business there. Virgin also argues that since it is likely that English law will control, it is inefficient for a United States court to interpret and apply foreign law.

Virgin's assertion that public interest concerns render England a more appropriate court is overstated. On balance, the public interest factors do not weigh heavily in favor of dismissal. England certainly has an interest in the outcome of this litigation because the accident occurred there, and the case involves the alleged negligence of a British corporation. Nonetheless, New York has an equally strong interest in the case because Virgin regularly does business in New York, Massaquoi receives New York State Workers' Compensation and pays New York State taxes, and both plaintiffs live minutes away in New Jersey. Moreover, courts are often required to apply foreign law and therefore the likelihood of having to do so should not be a reason for dismissal. In particular, English law is less difficult to apply than the law of other foreign jurisdictions because there is no language barrier and it is quite similar to American legal tradition.

### IV. *Conclusion*

The plaintiffs' choice of forum must not be disturbed unless the balance of private and public factors favors the defendant. As American citizens, plaintiffs must not be deprived of their home forum unless there is a clear showing that their convenience is strongly outweighed by the defendant's inconvenience. Virgin has failed to sustain its burden of establishing that the balance of factors tips strongly in favor of dismissal. The inconvenience that Virgin would experience litigating in New York is not nearly as onerous as the difficulty and expense that the plaintiffs would suffer in England. Virgin already does business in New York, has litigated here before, and as an airline, it can travel to New York with relative ease. On the other hand, travelling is particularly difficult for Massaquoi, who already claims to have difficulty walking. Moreover, the cost of transporting and lodging her treating physicians would be prohibitive. There is no evidence in this case that plaintiffs sued in New York to harass the defendant. The

---

**3.** Since the accident, Massaquoi receives a diminished monthly income, Mulbah has been forced to obtain a second job, and both have spent most of their savings. *See* Affidavit of Yuku Massaquoi, dated September 13, 1996, at ¶ 6; Affidavit of David Mulbah, dated September 13, 1996, at ¶¶ 4–5.

Southern District of New York is simply the most convenient forum for plaintiffs, located only a short commute from their home. In light of the foregoing considerations, defendant's motion is denied.

SO ORDERED.