**In re SKI TRAIN FIRE IN KAPRUN, AUSTRIA ON NOVEMBER 11, 2000**

No. MDL 1428(SAS).
No. 01 Civ. 6554.

United States District Court,
S.D. New York.

Aug. 8, 2002.

Robert Swift, Martin J. D'Urso, Kohn, Swift & Graf, PC, Philadelphia, PA, Jay J. Rice, Nagel, Rice, Dreifuss & Mazie LLP, Livingston, NJ, Edward D. Fagan, Fagan & Associates, Livingston, NJ, Kenneth Nolan, Christina Frye, Speiser, Krause, Nolan & Granito, New York City, for Plaintiffs.

Thomas D. Yannucci, Christopher Landau, James F. Basile, Grant M. Dixton, Kirkland & Ellis, Washington, DC, for Defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiffs Angela and Rudolf Kern, John and Suzanne Habblett, Dick and Carol Baker, and Clair Goodridge, are the parents and grandparents of six Americans killed in a ski train accident on November 11, 2000 in Kaprun, Austria. Their individual actions alleging that a total of seventeen defendant train and train part manufacturers, ski resort operators, and marketing companies were negligent and/or should be held strictly liable, have been consolidated before this Court by the Judicial Panel on Multidistrict Litigation ("MDL Panel").[1] Defendant Siemens AG now moves to dismiss the action against it pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction,[2] and, in the alternative, pursuant to the doctrine of forum non conveniens. *See* 3/28/02 Siemens AG's Memorandum in Support of Its Motion to Dismiss ("Def.Mem."). For the reasons set forth below, Siemens AG's motion is denied.

## I. BACKGROUND

### A. The Moving Defendant

Siemens AG is a German corporation that has its principal place of business in Munich. *See* MC ¶ 36. It is one of the world's largest electrical engineering and electronics manufacturers, and employs approximately 443,000 people in 193 countries. *See* 4/24/00 "Press Release: Siemens Completes Acquisition of ENTEX IT Services, Inc.," Siemens Website ("4/00 Press Rel."), Ex. 17 to Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss Based on Personal Jurisdiction ("Pl.

---

1. Subject matter jurisdiction is based on diversity of citizenship. *See* 28 U.S.C. § 1332(a)(3).

2. Plaintiffs also sued Siemens AG Oesterreich, the Austria-based affiliate of Siemens AG. *See* 12/21/01 Consolidated and Amended Com-

---

Opp."), at 2. Siemens AG owns 100% of Siemens Corporation, a New York corporation with its principal place of business in New York City. *See* MC ¶ 38.

### B. Procedural History

Siemens AG originally moved to dismiss on December 10, 2001, but subsequently withdrew that motion because it had not been served with process, *see* 2/28/02 Letter from James Basile, Attorney for Siemens defendants, to the Court. On March 28, 2002, after having been served, defendant moved again to dismiss this action. Rather than oppose the motion, plaintiffs sought to compel jurisdictional discovery, *see* 4/3/02 Letter from Robert Swift to the Court ("4/3/02 Pl. Ltr."), and submitted several memoranda purporting to list Siemens AG's contacts with this forum, *see* Ex. C to 4/3/02 Pl. Ltr.; 1/23/02 Memorandum ("Pl. List Mem."), Ex. 1 to 1/22/02 Letter from Edward Fagan, Robert Swift and Jay Rice, Plaintiffs' Attorneys, to the Court ("1/22/02 Pl. Ltr."). On May 8, 2002, this Court directed plaintiffs to respond to defendant's motion so that the issue would be fully briefed. *See* 5/8/02 Order.

## II. PERSONAL JURISDICTION

Plaintiffs argue that Siemens AG's contacts with New York are sufficient to confer jurisdiction over it. In the alternative, they contend that this Court has jurisdiction over Siemens AG by virtue of the New York presence of its New York subsidiary, Siemens Corporation.

---

plaint ("MC" or "Master Complaint"). Because that defendant was only recently served, however, *see* 7/2/02 Letter from Christopher Landau, Attorney for Siemens defendants, to the Court, its motion to dismiss is not fully briefed.

## A. Legal Standard

A court is obligated to dismiss an action against a defendant over whom it has no personal jurisdiction. *See* Fed. R.Civ.P. 12(b)(2); *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 26 F.Supp.2d 593, 597 (S.D.N.Y. 1998). Plaintiffs bear the ultimate burden of establishing, by a preponderance of the evidence, that this Court has jurisdiction over the defendant. *See Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994). At the pretrial stage, however, plaintiffs may carry this burden by pleading in good faith sufficient allegations of jurisdiction. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir.1998); *Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). Plaintiffs can make this showing through their own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant. *See Whitaker v. Am. Telecasting Inc.*, 261 F.3d 196, 208 (2d Cir.2001) (citations, quotation marks omitted). The court may thus consider materials outside the pleadings in ruling on this motion. *See Hsin Ten Enter. USA, Inc. v. Clark Enter.*, 138 F.Supp.2d 449, 452 (S.D.N.Y.2000).

## B. New York Law on Personal Jurisdiction

A court may exercise personal jurisdiction over any defendant "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located," Fed.R.Civ.P. 4(k)(1)(a), provided that the exercise of jurisdiction comports with the Fifth Amendment's Due Process Clause. *See Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 36 (2d Cir.2001). Thus, "[i]n assessing whether personal jurisdiction is authorized, 'the court must look first to the long-arm statute of the forum state, in this instance New York.'" *Whitaker*, 261 F.3d at 208 (quoting *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir.1997)). "If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process." *Id.* (citing *Bensusan*, 126 F.3d at 27). New York subjects a foreign corporation to general jurisdiction if it is "doing business" in the state. *See* N.Y. C.P.L.R. § 301 (McKinney 2002) ("CPLR § 301");[3] *Aerotel Ltd. v. Sprint Corp.*, 100 F.Supp.2d 189, 191 (S.D.N.Y.2000) (interpreting CPLR § 301). Under this test, "a foreign corporation is amenable to suit in New York if it is 'engaged in such a continuous and systematic course' of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *Aerotel*, 100 F.Supp.2d at 191–92 (quoting *Frummer v. Hilton Hotels Int'l Inc.*, 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967)).

To determine whether a foreign corporation is doing business in New York, courts have focused on a traditional set of indicia: (1) whether the company has an office in the state; (2) whether it has any bank accounts or other property in the state; (3) whether it has a phone listing in the state; (4) whether it does public relations work there; and (5) whether it has

---

**3.** At common law, New York courts exercised general jurisdiction over foreign corporations which were doing business in the state. *See Jacobs v. Felix Bloch Erben Verlag*, 160 F.Supp.2d 722, 731 n. 7 (S.D.N.Y.2001) (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir.1985)). "Because section 301 provides that '[a] court may exercise such jurisdiction over persons, property or status as might have been exercised heretofore,' 'doing business' in New York continues to be a basis for general jurisdiction." *Id.* (quoting CPLR § 301).

individuals permanently located in the state to promote its interests. *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 98 (2d Cir.2000) (Leval, J.) (citing *Hoffritz*, 763 F.2d at 58; *Frummer*, 19 N.Y.2d at 537, 281 N.Y.S.2d 41, 227 N.E.2d 851), *cert. denied*, 532 U.S. 941, 121 S.Ct. 1402, 149 L.Ed.2d 345 (2001). Casual or occasional activity does not constitute doing business; rather, section 301 requires a showing of "continuous, permanent, and substantial activity in New York." *Landoil Res. Corp. v. Alexander & Alexander, Services, Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990). "The 'doing business' standard is a stringent one because a corporation which is amenable to the Court's general jurisdiction 'may be sued in New York on causes of action wholly unrelated to acts done in New York.'" *Jacobs*, 160 F.Supp.2d at 731 (quoting *Ball v. Metallurgie Hoboken–Overpelt S.A.*, 902 F.2d 194, 198 (2d Cir. 1990)).

### C. Analysis

### 1. Siemens AG's Independent Contacts with New York

Plaintiffs argue that Siemens AG's own contacts with this forum, apart from those of any subsidiary, illustrate that it has a continuous, systematic and permanent presence in New York. The following jurisdictional allegations are derived from the Master Complaint and supporting materials provided by plaintiffs. Siemens AG's stock is traded on the New York Stock Exchange ("NYSE") in the form of American Depository Receipts ("ADRs"). *See* MC ¶ 43(c). Siemens AG employs an investor relations representative in New York, a "Press Contact" by the name of Bud Grebey, and a contact person "for Siemens AG's SEC filings." Pl. Opp. at 6. It uses the Morgan Guaranty Trust Com-

pany of New York as its "ADR Depository Bank," and the New York firm Spear, Leads & Kellog as its "specialist." "Siemens AG—U.S. Listing" Webpage, Ex. 21 to Pl. Opp., at 2. In addition, Siemens AG engages the New York office of Baker Botts LLP on a regular basis to register patents and trademarks in the United States. *See* 4/25/02 Patent Application No. 20020049514, Ex. 19–B to Pl. Opp. (listing Baker Botts LLP in New York under "Correspondence Name and Address"); 3/12/01 Press Release Entitled "Siemens Lists on New York Stock Exchange" ("3/12/02 Pr. Rel."), Ex. 19–A to Pl. Opp., at 1.

In 1985, Siemens AG sued here to enforce a settlement agreement. *See* "Search Result Documents" Listing Cases in United States Federal and State Courts in Which Siemens AG, Siemens AG Oesterreich, and Siemens Corporation Were Involved ("Westlaw Caselist"), Ex. 2 to 1/22/02 Pl. Ltr. (citing *Siemens AG v. Heather Leasing Corp.*, No. 85 Civ. 3123, 1986 WL 993, at *1 (S.D.N.Y. Jan. 13, 1986)). On another occasion, a lawsuit brought by Siemens AG in Illinois was transferred to New York. *See* Pl. Opp. at 11 (citing *Siemens AG v. Sonotone*, 370 F.Supp. 970, 973 (N.D.Ill.1973)).

Siemens's[4] "website's opening banner proclaims: Siemens ... the Global Network of innovation." Pl. List Mem. ¶ 4. The website also states that "Siemens has been an integral part of the U.S. economy for almost fifty years" and "[W]e are building on that presence in all fifty states: The American market now generates about 22 percent of Siemens'[s] worldwide revenues and was the company's largest source of new orders in fiscal 2000." *Id.* ¶ 5(C). In addition to touting Siemens AG as a global

---

4. Siemens AG's website does not distinguish between different entities in the "Siemens Group," but rather refers to "the generic 'Sie-

mens.'" Memorandum Entitled "Outline of Basis for General Jurisdiction over Siemens," Ex. 1 to 1/22/02 Pl. Ltr., ¶ 3.

company, the website also offers unique interactive features, such as a virtual saleswoman, "a green eyed, red haired smiling icon beckoning the consumer to 'Let me help you.'" Pl. Opp. at 8–9. The user is invited to engage in a range of transactions, from buying a cell phone to leasing a locomotive. *See* "Buy from us" and "Transportation Systems" Webpages, Exs. 11–12 to Pl. Opp. The website also advertises job openings. *See* "Career Opportunities at Siemens" Webpage, Ex. 14 to Pl. Opp. Finally, plaintiffs allege that Siemens AG transacts "significant sales in the U.S. and N.Y. regions," MC ¶ 43(d), and provides financing to American companies, *see id.* ¶ 43(e). In April 2000, Siemens AG purchased Entex, a Rye, New York corporation. *See* 4/00 Press Rel. at 1.

Plaintiffs thus summarize the alleged contacts that Siemens AG has with New York: "its employees, its contracts, its depository bank accounts, its phone numbers, its interactive web site, its television commercials, its lawyers, its shareholders, its investor relations department and its litigation in New York courts." Pl. Opp. at 1. Characteristically, plaintiffs' summary confuses many contacts of Siemens Corporation, the New York company, with those of Siemens AG. Plaintiffs do not, for example, make any specific allegation that Siemens AG actually has a bank account in this state, or that it has itself contracted in New York.

Each of the alleged contacts would not, itself, confer general jurisdiction over Siemens AG. "[T]he fact that a foreign corporation has a website accessible in New York is insufficient to confer jurisdiction under CPLR § 301." *Spencer Trask Ventures v. Archos S.A.*, No. 01 Civ. 1169, 2002 WL 417192, at *6–*7 (S.D.N.Y. Mar. 18, 2002). *See also Citigroup, Inc. v. City Hldg. Co.*, 97 F.Supp.2d 549, 570–71 (S.D.N.Y.2000) (stating that Internet activ-ity *may* give rise to jurisdiction pursuant to CPLR § 302 depending on where the "transaction" is deemed to have occurred); *Armouth Int'l, Inc. v. Haband Co.*, 277 A.D.2d 189, 715 N.Y.S.2d 438, 439 (2d Dep't 2000) (holding that plaintiff failed to satisfy its burden of showing that the cause of action was substantially related to the defendant's Internet activity). Were it otherwise, every entity or individual that ran a highly interactive website from anywhere in the world could be sued for any reason in New York.

That Siemens AG is listed on the NYSE, employs a handful of individuals in New York to conduct the tasks necessary to facilitate this listing, and utilizes a New York depository bank and investment specialist firm, is also insufficient to confer jurisdiction. *See Wiwa*, 226 F.3d at 97 ("[T]he prevailing caselaw accords foreign corporations substantial latitude to list their securities on New York-based stock exchanges and to take the steps necessary to facilitate those listings (such as making SEC filings and designating a depository for their shares) without thereby subjecting themselves to New York jurisdiction for unrelated occurrences."). Further, most of the telephone calls received by Siemens AG's investor relations contact in New York are transferred to Germany. *See* 6/4/02 Declaration of Esra Ozer, Senior Manager at Siemens Corporation ("Ozer Decl."), Ex. B to Reply Memorandum in Support of Siemens AG's Motion to Dismiss ("Def.Reply") ¶¶ 4–5. Finally, Siemens AG's purchase of Entex, which plaintiffs do not allege that Siemens AG operates, is itself insufficient to confer jurisdiction. *See Jerge v. Potter*, No. 99 Civ. 0312E(F), 2000 WL 1160459, at *5 (W.D.N.Y. Aug. 11, 2000) (rejecting assertion of jurisdiction over foreign corporation that "invests in and owns several corporations within the United States but does not directly operate any of such entities.").

All of this activity when viewed with the remaining contacts, however, demonstrates that Siemens AG conducts substantial and continuous business in this state. In addition to conducting sales in New York over the Internet, being listed on the New York Stock Exchange and conducting related activities here, and buying a New York company, Siemens AG also utilizes the services of a New York law firm to register U.S. patents of which it holds 7,000, employs a press contact here, and has sued in New York. Siemens AG's glowing proclamation that the United States has been an integral part of its business for fifty years indicates the permanent and systematic— as opposed to occasional and random— nature of these contacts. Thus, New York has general jurisdiction over Siemens AG.

### 2. Presence of Siemens Corporation in New York

██ Regardless of its direct contacts with this state, the presence of its New York subsidiary, Siemens Corporation, is also sufficient to confer general jurisdiction over Siemens AG. "The continuous presence and substantial activities that satisfy the requirements of doing business do not necessarily need to be conducted by the foreign corporation itself." *Wiwa*, 226 F.3d at 95. While "the presence of [a] subsidiary alone does not establish the parent's presence in the state," *Jazini*, 148 F.3d at 184 (citing *Volkswagenwerk AG v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir.1984)), personal jurisdiction over a foreign parent exists where its New York subsidiary is either a "mere department," or an "agent," of the parent. *Id.* (citing *Koehler*, 101 F.3d at 865).

██ In order to show that Siemens Corporation is a mere department of Siemens AG, plaintiffs must allege facts supporting the four factors outlined in *Beech Aircraft*: (1) common ownership; (2) fi-

nancial dependency of the subsidiary on the parent; (3) the degree to which the parent interferes in the selection and assignment of the subsidiary's personnel and fails to observe corporate formalities; and (4) the degree of control that the parent exercises over the subsidiary's marketing and operational policies. 751 F.2d at 120–22. "A corporate entity is considered to be a 'mere department' of a parent company only where the control of the lesser entity is 'pervasive enough that the corporate separation is more formal than real.'" *Jacobs*, 160 F.Supp.2d at 734 (quoting *H. Heller & Co. v. Novacor Chem. Ltd.*, 726 F.Supp. 49, 54 (S.D.N.Y.1988)).

██ To this end, plaintiffs allege that Siemens Corporation is included in the consolidated financial statements of Siemens AG, receives some funding from the parent, and is held out to the public, along with all of Siemens AG's other subsidiaries, as part of one enterprise. Yet, each of these allegations has been rejected by courts analyzing whether a subsidiary is a mere department of its parent. *See J.L.B. Equities v. Ocwen Fin. Corp.*, 131 F.Supp.2d 544, 550 (S.D.N.Y.2001) (noting that generally accepted accounting principles *require* consolidated financial reporting); *Vendetti v. Fiat Auto S.p.A.*, 802 F.Supp. 886, 895 (W.D.N.Y.1992) (holding that intercompany loans and transfers of cash for investment does not provide any basis to infer an alter ego relationship); *Bellomo v. Pennsylvania Life Co.*, 488 F.Supp. 744, 745 (S.D.N.Y.1980) (stating that a parent does not subject itself to jurisdiction merely by holding an affiliate group out as a unitary enterprise). Other than these allegations, plaintiffs merely restate parts (2) through (4) of the *Beech* test.[5] *See* Pl. Opp. at 14–20. This is insufficient to make out a prima facie showing of jurisdiction. *See Jazini*, 148

---

**5.** They satisfy prong (1) of *Beech:* common ownership.

F.3d at 185. Plaintiffs thus fail to allege that Siemens Corporation is a mere department of Siemens AG.

■ By contrast, the Court need not make any determination with respect to piercing the corporate veil—to find that Siemens Corporation is an agent of Siemens AG. *See Bellomo,* 488 F.Supp. at 746 n. 4 (noting as part of agency analysis that a finding of jurisdiction does not require piercing the corporate veil); *see also id.* at 745–47 (holding that while plaintiff had not established foreign parent's control over New York subsidiary such that jurisdiction could be found pursuant to alter ego/mere department theory, jurisdiction nevertheless existed under agency theory); *Sunrise Toyota Ltd. v. Toyota Motor Co.,* 55 F.R.D. 519, 527–28 (S.D.N.Y.1972)(same); *see also Dorfman v. Marriott Int'l Hotels ("Dorfman I"),* No. 99 Civ. 10496, 2002 WL 14363, at *10 (S.D.N.Y. Jan. 3, 2002)("[W]hen two corporations have common ownership and their activities are interrelated as here, they may have an agency relationship for jurisdictional purposes, even if the resident corporation is not controlled by the nonresident entity.")(alterations in original; citation, quotation marks omitted). Plaintiffs need only "show that the subsidiary does all the business which the parent corporation could do were it here by its own officials." *Frummer,* 19 N.Y.2d at 537, 281 N.Y.S.2d 41, 227 N.E.2d 851 (holding that New York courts had general jurisdiction over foreign hotel company by virtue of the New York presence of its subsidiary reservation service). *See also Gelfand v. Tanner Motor Tours, Ltd.,* 385 F.2d 116, 120–21 (2d Cir.1967)(finding general jurisdiction over California bus company where its sales representative had office in New York and engaged in broad range of services for it—such that the California company would perform the same functions were it in New York by its own officials). The Second Circuit has elaborated on *Frummer* and *Gelfand* in

holding that agency may be found where the New York activity of a subsidiary is of "meaningful importance" to the parent. *Wiwa,* 226 F.3d at 96.

■ "To come within this rule, [ ] plaintiff[s] need demonstrate neither a formal agency agreement, nor that the defendant exercised direct control over its putative agent." *Id.* at 95 (citing *Palmieri v. Estefan,* 793 F.Supp. 1182, 1194 (S.D.N.Y. 1992); *New York Marine Managers, Inc. v. M.V. "Toporl",* 716 F.Supp. 783, 785 (S.D.N.Y.1989)). "The agent must be primarily employed by the defendant and not engaged in similar services for other clients." Id. For example, independent contractors with many clients are not considered agents of their clients for jurisdictional purposes. *See Miller v. Surf Properties, Inc.,* 4 N.Y.2d 475, 481, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958). Where, on the other hand, a subsidiary is "created by the parent[ ] for ... corporate finance purposes, [or] to carry on business on its behalf," its activities may properly be attributed to the parent for jurisdictional purposes. *Bellomo,* 488 F.Supp. at 746. *See also J.L.B. Equities,* 131 F.Supp.2d at 549 (agency will be found where subsidiary conducts business "on behalf of" the parent). Common ownership gives rise to a valid inference as to the broad scope of the agency in the absence of an express agency agreement. *See Bellomo,* 488 F.Supp. at 746; *Frummer,* 19 N.Y.2d at 538, 281 N.Y.S.2d 41, 227 N.E.2d 851.

■ Here, plaintiffs have submitted materials showing that Siemens Corporation is (1) 100% owned by Siemens AG and (2) engaged primarily in services for Siemens AG. Siemens Corporation serves as a holding company for Siemens AG, *see* 8/2/88 "Siemens Renames U.S. Holding Company: Names Langer as Chairman," *PR Newswire Ass'n,* Ex. 2 to Pl. Opp., at 1, and its functions include: (1) providing

accounting, MIS support and financial reporting services for Siemens's businesses; (2) developing and implementing marketing communications, including corporate advertising and online communications, to "build the Siemens brand"; (3) executing mergers, acquisitions, divestitures and other transactions on behalf of Siemens's companies; (4) overseeing compliance of Siemens's companies with all federal and state income tax and securities laws. "Siemens Today: Siemens Corporation" Webpage, Ex. 22 to Pl. Opp., at 1. Siemens Corporation purchased Efficient Networks, Inc., a Delaware corporation, using funds provided by Siemens AG. *See* 3/2/2001 SEC Edgar Filing Statement, Ex. 8 to Pl. Opp., at 1, 4, 25–26 (describing negotiations and meetings involving officers of Siemens AG and Siemens Corporation). Siemens Corporation also conducts Siemens AG's core business on behalf of Siemens AG. It contracts with New York City Transit to provide electrical, communications, control, switching and safety systems. *See* MC ¶ 47.

It is fair to say, given the importance to Siemens of its United States business; and the necessity of Siemens Corporation's tasks, that Siemens AG would perform these functions were no agent available. *See* 3/12/02 Pr. Rel. at 1 (quoting Siemens AG's President and CEO as saying, "The U.S. is now Siemens'[s] top priority. Our business here will be a jewel in our worldwide operation."). Thus, this Court has personal jurisdiction over Siemens AG due to the presence of its agent in New York.

 This finding of jurisdiction comports with due process. As stated by New York's highest court, this Court is:

> not unmindful that litigation in a foreign jurisdiction is a burdensome inconvenience for any company. However, it is part of the price which may properly be demanded of those who extensively engage in international trade. When their

activities abroad, either directly or through an agent, become as widespread and energetic as the activities in New York conducted by [defendant], they receive considerable benefits from such foreign business and may not be heard to complain about the burdens.

*Frummer*, 19 N.Y.2d at 538, 281 N.Y.S.2d 41, 227 N.E.2d 851. Requiring Siemens AG, a multinational corporation with both direct and indirect contacts in New York, to litigate in this forum does not offend notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(setting forth requirement that the exercise of long-arm jurisdiction comport with the Fifth Amendment's Due Process Clause). Rather, the undisputed presence of Siemens AG's agent in New York, in addition to Siemens AG's independent contacts in this forum, *see supra* Part II.C.1., make it entirely reasonable to require Siemens AG to litigate here. *See, e.g., Self Int'l Ltd. v. La Salle Nat'l Bank*, No. 01 Civ. 4291, 2002 WL 500372, at *3–*4 (S.D.N.Y. Mar. 20, 2002) (grouping parent's independent contacts in New York with presence of New York subsidiary to conclude that general jurisdiction would not offend due process).

## III. FORUM NON CONVENIENS

I turn now to defendant's motion to dismiss in favor of trial in Austria, which defendant contends is the far more convenient forum for this litigation. "A federal court's inherent power to decline to entertain a case over which it has jurisdiction is embodied in the doctrine of *forum non conveniens*." *Dorfman v. Marriott Int'l Hotels ("Dorfman II")*, No. 99 Civ. 10496, 2001 WL 69423, at *6 (S.D.N.Y. Jan. 29, 2002) (citation omitted). This doctrine "does not come into play unless the court in which the action was brought has both subject matter and personal jurisdiction

and is a proper venue." 15 Charles Alan Wright et al., *Fed. Prac. & Proc. Juris.2d* § 3828 (updated 2002) (citing *Patrickson v. Dole Food Co.*, 251 F.3d 795, 801 n. 3 (9th Cir.2001)). "If the case is wanting in any of those respects, the action should be dismissed on that ground without reaching questions of *forum non conveniens.*" *Id.* Having determined that personal jurisdiction exists, I will next address defendant's motion to dismiss pursuant to the doctrine of forum non conveniens.

## A. Legal Standard

 In considering a motion to dismiss on forum non conveniens grounds, " 'the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice.' " *Massaquoi v. Virgin Atlantic Airways*, 945 F.Supp. 58, 60 (S.D.N.Y.1996) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)). The Supreme Court established the modern doctrine of forum non conveniens in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), which courts continue to apply when faced with a motion to dismiss on this ground. To succeed on such a motion, a defendant must satisfy a two-prong test: it must show that (1) an adequate alternate forum exists; and (2) private and public interest factors weigh in favor of dismissal. *See Gilbert*, 330 U.S. at 508–09, 67 S.Ct. 839; *Peregrine Myanmar, Ltd. v. Segal*, 89 F.3d 41, 46 (2d Cir.1996).

Defendant must demonstrate that these public and private interest factors "weigh so heavily in favor of the foreign forum that they overcome the presumption for plaintiff[s'] choice of forum," which will "rarely be disturbed." *Dorfman II*, 2001 WL 69423, at *7 (citation omitted). This presumption "may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). "This remains true even where ... United States plaintiff[s] sue[ ] a foreign defendant in a U.S. court that is outside the plaintiff[s'] home district." *Accordia Northeast, Inc. v. Thesseus Int'l Asset Fund*, 205 F.Supp.2d 176, 179 (S.D.N.Y.2002) (citing cases).

## B. Analysis

 The first requirement is "usually satisfied if the defendant is amenable to process in the alternative forum," but the alternate forum may not be deemed adequate where the remedy offered is " 'clearly unsatisfactory.' " *Massaquoi*, 945 F.Supp. at 61 (quoting *Piper Aircraft*, 454 U.S. at 254 n. 22, 102 S.Ct. 252). Here, plaintiffs have raised serious questions going to the integrity of the criminal investigation in Austria. Austrian investigators have apparently handled evidence with little care, secreting physical and documentary evidence in hotel rooms, a trunk of a car, and other places. *See* 7/12/02 and 7/16/02 Letters from Edward Fagan, Plaintiffs' Attorney, to the Court (quoting from, and attaching, articles in online Austrian newspapers concerning the criminal trial in the *Kaprun* case). In addition, Austrian investigators have no record of many statements made by Americans to them in the days following the accident. *See* 6/25/02 Affidavit of John Habblett, Plaintiff ("6/25/02 Habblett Aff.") ¶¶ 21(c), 23–24, 27; 6/21/02 Affidavit of Michael Witti, Attorney for Families of German Victims and Survivors ("Witti Aff.") (free-standing document) ¶ 21. The integrity of the judicial system, however, is at issue here—and not that of the executive branch.

 Plaintiffs also argue that the forum is inadequate because Austrian substantive law is unfavorable to them. Yet, it is well-settled that a difference in sub-

stantive law is not to be considered on a forum non conveniens inquiry. *See Piper Aircraft*, 454 U.S. at 250–52, 102 S.Ct. 252. Further, Austrian law most likely governs plaintiffs' claims. Thus, to the extent plaintiffs argue that the forum is inadequate because Austrian law does not provide a cause of action for, *e.g.*, spoliation of evidence, or loss of consortium for the wrongful death of minor children, these arguments are meritless. In any event, because defendant fails to make the required showing under the second prong in the *forum* inquiry, there is no need to further address plaintiffs' contentions regarding the first.

 The second prong requires defendant to show that public and private interest factors tip decisively in favor of trial in the alternate forum. Private interest factors include (1) the private interest of the litigant; (2) the relative ease to sources of proof; (3) the availability of compulsory process for attendance of unwilling witnesses; (4) the cost of obtaining attendance of willing witnesses; (5) possibility of viewing the premises, if that would be appropriate; and (6) all other practical problems that make trial of a case easy, expeditious and inexpensive. *See* 15 *Fed. Prac. & Proc. Juris.2d* § 3828 (citing *Gilbert*, 330 U.S. at 509, 67 S.Ct. 839). While plaintiffs' choice of forum is entitled to somewhat less deference because they have sued in a representative capacity,[6] defendant must nevertheless make a clear showing that litigation would be vexatious and oppressive out of all proportion to plaintiffs' convenience in order to overcome the presumption in favor of plaintiffs' choice of forum. *See DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28–30 (2d Cir.2002) (citing *Koster*, 330 U.S. at 524, 67 S.Ct. 828, and vacating discussion of that case in *DiRienzo v. Philip Servs. Corp.*, 232 F.3d 49, 60–62 (2d Cir.2000)).

Regarding private interest factors, defendant argues that this case should be dismissed because the accident took place in Austria, and therefore the majority of the witnesses, and the bulk of the evidence, are located in Austria. Defendants rely, however, on witness lists provided by the Austrian criminal authorities who "provide no relevant facts for the civil litigation and would not be witnesses at trial in any event." Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss on the Ground of Forum Non Conveniens ("FNC Opp.") at 19. Plaintiffs, on the other hand, intend to call American eyewitnesses who were at the resort on the day of the accident—many of whom gave statements to criminal investigators. *See* Affidavit of Major Drew Stathis, United States Army ("Stathis Aff."), Ex. 9 to Certification of Jay J. Rice, Plaintiffs' Attorney ("Rice Cert."), ¶ 27. They will also call employees of the named defendants who are American, German and Austrian. *See* Pl. FNC Opp. at 19. To the extent that certain foreign defendants would not be sub-

---

**6.** Plaintiffs propose that all victims' family members be certified as a class. Here, the balance of conveniences is not affected by plaintiffs' proposed representative suit because (1) all named plaintiffs in this multidistrict litigation are American, and two, Angela and Rudolf Kern, are residents of the Southern District of New York, *see In re Lloyd's Am. Trust Fd. Litig.*, 954 F.Supp. 656, 660 (S.D.N.Y.1997) (denying forum non conveniens motion where named plaintiffs were American, although remainder of proposed class was not); and (2) the non-American plaintiffs are widely dispersed, *see Cromer Fin. Ltd. v. Berger*, 158 F.Supp.2d 347, 363 (S.D.N.Y.2001) (denying forum non conveniens motion in proposed class action even where named plaintiffs were foreign because plaintiffs were "widely dispersed"). The convenience of the named plaintiffs is most important to a forum non conveniens analysis because it is these individuals who will be responsible for the vigorous prosecution of this action.

ject to process here, plaintiffs have used and plan to rely upon letters rogatory to obtain those witnesses' testimony. Courts have recognized the availability of letters rogatory as relevant in deciding whether plaintiffs' chosen forum is inconvenient. *See Overseas Programming Cos., Ltd. v. Cinematographische Commerz–Anstalt,* 684 F.2d 232, 235 (2d Cir.1982); *In re Livent, Inc. Sec. Litig.,* 78 F.Supp.2d 194, 211 (S.D.N.Y.1999). Plaintiffs also represent that they will call residents of the United States, Germany, Japan, Holland and Slovenia as damage witnesses. *See* Pl. FNC Opp. at 19–20. A good portion of the documentary evidence—in the form of investigative reports made by the United States Army—is located in the United States. Finally, plaintiffs' expert has testified that the inaccessibility of the site of the accident makes it likely that it would be viewed only on video, *see* Declaration of Stefan Launsky, Plaintiffs' Expert, Ex. 9 to 2/1/02 Declaration of Edward Fagan et al. ("Fagan Decl."), ¶ 19—which can be done here as conveniently as in Austria.

While litigation in a foreign forum is always inconvenient, the inconvenience to the corporate defendant in this action is slight compared to the "obvious and significant inconvenience" to the individual named plaintiffs, if this case were transferred to Austria. *Guidi v. Inter–Cont'l Hotels Corp.,* 224 F.3d 142, 147 (2d Cir. 2000). "This is not a case where the plaintiff is a corporation doing business abroad and can expect to litigate in foreign courts." *Id.* Siemens AG, the parent company to a multinational conglomerate, has vast resources and can therefore easily transport witnesses and evidence to this forum, a major city that is a direct flight from any major city in the world. In contrast, the named plaintiffs have only modest means and would suffer hardship if forced to litigate in Austria. *See, e.g.,* 1/29/02 Affidavit of John Habblett Regarding Financial Condition, Ex. 3 to Rice

Cert., ¶ 15. Thus, the convenience of witnesses and location of the evidence do not favor dismissal.

■ Nor does Siemens AG show that public interest factors weigh in favor of dismissal. Public interest factors include (1) whether New York law or foreign law applies to the case; (2) the administrative burden on the Court; and (3) whether the community has any relation to the litigation because there is local interest in having localized controversies decided at home. *See Piper Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. 252; *Gilbert,* 330 U.S. at 509, 67 S.Ct. 839. With respect to these factors, Siemens AG argues that (1) Austrian law applies to this action; (2) there are related proceedings taking place in Austria; and (3) it would be unfair to impose jury duty on residents of the Southern District of New York due to the lack of connection to the lawsuit. These arguments are addressed in turn.

■ In a diversity case, a federal court must determine the body of substantive law to be applied by reference to the conflict of law and choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg.,* 313 U.S. 487, 497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under New York's conflict of law rules, the first step in the inquiry is to determine whether there is an actual conflict between the laws invoked by the parties. *See Booking v. Gen'l Star Mgt. Co.,* 254 F.3d 414, 419 (2d Cir.2001) (citing *In re Allstate Ins. Co.,* 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993)). If there is a conflict, the court must classify the conflicting laws by subject matter by reference to New York law (*e.g.,* tort or contract, substantive or procedural). *See id.* at 420. Having classified the laws, the court must then look to New York choice of law rules to determine which state's substantive law applies. *See id.*

■ Here, it is clear that Austrian law and New York law differ on many issues, including strict liability and damages. For example, Austrian law contains rules specific to mass transportation, may cap recovery under a strict liability theory to $260,000 per victim, and does not allow punitive damages. *See* Declaration of Dr. Georg Kodek, an Austrian Judge in the Superior Court in Eisenstadt, Austria ("Kodek Decl."), Ex. A to Def. Reply, ¶ 10; Declaration of Christian Wolf, Plaintiffs' Expert on Austrian Law ("Wolf Decl."), Ex. 10 to Rice Cert., ¶ 12. Further, Austria is a civil code country. "New York courts do not indulge the presumption that New York law is the same as the law of a civil code country." *Curley v. AMR Corp.*, 153 F.3d 5, 14 (2d Cir.1998) (citing *Loebig v. Larucci*, 572 F.2d 81, 85 (2d Cir.1978)). It is only when no evidence has been presented on foreign law that New York courts will decide cases in accordance with New York law. *See id.* As in *Curley*, "[s]uch is not the situation here." *Id.* Both parties have provided the Court with evidence of Austrian law. *See* Kodek Decl.; Wolf Decl.; 1/30/02 Declaration of Paul Oberhammer, Professor of Law, Germany, Ex. 10 to Fagan Decl.; 6/27/02 Supplementary Declaration of Oberhammer (freestanding document).

■ Substantive law sounding in tort requires the Court to apply the law of the state which has the greatest interest in the outcome. *See Curley*, 153 F.3d at 12; (citing *Babcock v. Jackson*, 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963)); *AroChem Int'l Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir.1992). As part of its interest analysis, "the New York Court of Appeals has distinguished between rules regulating conduct and rules governing loss allocation." *Comer v. Titan Tool, Inc.*, 875 F.Supp. 255, 259 (S.D.N.Y.1995). Here, the plaintiffs' negligence and strict liability claims all involve conduct-regulating—not loss-allocating—rules of law. *See Richardson v. Michelin North Am., Inc.*, No. 95 Civ. 760, 1998 WL 135804, at *4 (W.D.N.Y. Mar. 18, 1998) (citations omitted). "'If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.'" *Id.* (quoting *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993)).

Here, not only is Austria the locus of the tort, but it is clear that Austria has the far greater interest in this litigation—many if not most of the 155 victims were Austrian, the safety of Austria's transportation systems is implicated, and the defendants committed much of the alleged wrongful conduct within Austria's borders. While New York has a strong interest in compensating the Kerns, New York law dictates that the law of the locus of the tort apply.[7] In addition, it appears that all of the alleged wrongful conduct—including the design of the train and train parts—took place outside New York. *See Value Partners S.A. v. Bain & Co.*, No. 98 Civ. 1562, 1998 WL 336648, at *4 (S.D.N.Y. June 22, 1998) (holding that an action had "very little to do with New York and nearly everything to do with Brazil" because "all alleged injuries and damages were sustained in Brazil [and] the tortious conduct

---

7. Where loss-allocating rules are in issue, the law of the domicile of at least one of the parties ought to apply. *See Comer*, 875 F.Supp. at 259 (citing *Padula v. Lilarn Prop. Corp.*, 84 N.Y.2d 519, 520, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994); *Neumeier v. Kuehner*, 31 N.Y.2d 121, 128–29, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972)). Thus, even if the rules in issue here were deemed loss-allocating, the law of Austria would still apply because it appears from the Master Complaint that more of the plaintiffs and defendants are domiciled there than in any other country.

giving rise to plaintiffs' claims occurred in areas outside New York."). "While the choice of law issue need not be definitively resolved at this point," this Court would "likely be required to apply" Austrian law to plaintiffs' claims. *McLaughlin v. Bankers Trust of New York*, No. 97 Civ. 9312, 1998 WL 355419, at \*4 (S.D.N.Y. July 2, 1998).

 Although *Gilbert* cautions against entanglement with issues of foreign law, this factor is by no means dispositive. *See World Film Servs., Inc. v. RAI Radiotelevisione Italiana S.p.A.*, No. 97 Civ. 8627, 1999 WL 47206, at \*8 (S.D.N.Y. Feb. 3, 1999). Trial courts may find and apply foreign law. *See* 9 Charles Alan Wright et al., *Fed. Prac. & Proc.* § 2444 (3d ed.1995). They may even use experts on foreign law to assist them. *See In re Initial Public Offering Sec. Litig.*, 174 F.Supp.2d 61, 65 (S.D.N.Y.2001) ("[W]hen interpreting foreign law, expert legal opinion may be allowed."). Indeed, this Circuit has stated that the "need to apply foreign law is not in itself a reason to apply the doctrine of forum non conveniens, and [courts] must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform." *Manu Int'l, S.A. v. Avon Prods.*, 641 F.2d 62, 67 (2d Cir.1981) (reversing district court's dismissal on forum non conveniens grounds).

Defendant argues that the criminal proceeding already underway in Austria would render this litigation duplicative, which weighs heavily in favor of dismissal. To the contrary, the Second Circuit has stated repeatedly that the existence of related proceedings is not even mentioned in *Gilbert*, and therefore should not be given much consideration. *See Guidi*, 224 F.3d at 148 (reversing district court for giving this factor decisive weight); *DiRienzo*, 294 F.3d at 31 (noting that overlap with related proceeding in Canada was "of little weight"). Moreover, legal efforts will not be duplicated because the proceeding underway in Austria is criminal in nature, and involves different parties than those before the Court. Furthermore, plaintiffs' representative, Edward Fagan, has thus far been excluded from participating in the Austrian criminal proceeding, *see* Witti Aff. ¶¶ 6(b), 15, 19, thus further reducing any administrative advantage to deferring to the related proceeding.

Defendants argue, finally, that it is unfair to impose jury duty in a forum which has little to no interest in the litigation. This argument is not persuasive. The Southern District of New York has a strong interest in resolving the claims of two of its own residents, Angela and Rudolf Kern, and may fairly press its citizens into jury duty in conjunction with this case. In addition, this case involves the claims of American military personnel serving abroad, and their families, who perished on a vacation that was marketed to them as members of the military. It is estimated that 500 military personnel and family members were at the Kaprun resort on the day of the accident. *See* Stathis Aff. ¶ 25. The United States Army launched a far-ranging investigation into possible causes immediately after the accident. *See id.* ¶¶ 24–25, 38. The United States, and New York in particular, have a strong interest in the proper resolution of the claims in this litigation. Even under a standard of reduced deference to plaintiffs' choice of forum, defendant has not met its burden of showing that the balance of public and private interest factors tips in favor of trial in Austria, or that this litigation would be so oppressive and vexatious to it as to be out of all proportion to plaintiffs' convenience. *See Koster*, 330 U.S. at 524, 67 S.Ct. 828.

## IV. CONCLUSION

For the foregoing reasons, Siemens AG's motion to dismiss for lack of personal

jurisdiction, and on the ground of forum non conveniens, must be denied. A status conference will be scheduled after the motions of the remaining defendants are decided.

SO ORDERED.